7 P.3d 158

**LIFEFLITE MEDICAL AIR TRANS-PORT, INC., an Arizona corporation, Plaintiff–Appellant, Cross Appellee,**

v.

**NATIVE AMERICAN AIR SERVICES, INC., a Nevada corporation; Native American Air Ambulance, Inc., a Nevada corporation; Richard and Denise Heape, husband and wife; Thomas and Janet Kelley, husband and wife, Defendants–Appellees, Cross Appellants.**

No. 1 CA–CV 99–0099.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 3, 2000.

Rhees, Hopkins & Kreamer by Joseph C. Kreamer Kelly Brown, Phoenix, for Plaintiff–Appellant/Cross Appellee.

Grant, Williams, Lake & Dangerfield by Merwin D. Grant, Kenneth B. Vaughn, Phoenix, for Defendants–Appellees/Cross Appellants.

## OPINION

NOYES, Judge.

¶1 Lifeflite Medical Air Transport, Inc. ("Lifeflite") appeals from a verdict and award of attorneys' fees in favor of Native American Air Ambulance, Inc. ("NAAA"), Native American Air Services, Inc., Richard and Denise Heape, and Thomas and Janet Kelley (collectively "Defendants"). Defendants cross appeal from the denial of a motion for judgment as a matter of law on Lifeflite's conversion claim. The appeals present several issues. In this opinion, however, we address only Lifeflite's claim of error related to the trial court's racketeering jury instruction. Because the remaining issues do not meet the criteria for publication, we resolve them in a contemporaneous, unpublished memorandum decision in which we affirm on the appeal and reverse and remand on the cross appeal. *See* ARCAP 28(b); *Fenn v. Fenn*, 174 Ariz. 84, 85, 847 P.2d 129, 130 (1993). We have appellate jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21(A)(1) (1992) and –2101(B) (1994).

### I.

¶2 Lifeflite and NAAA were competitors in the air ambulance industry in Arizona. This case arises from the admitted theft in early 1995 of certain of Lifeflite's materials by Lifeflite's then-employee William Madison. At the time of the thefts, Madison was assisting NAAA to start up its competing air ambulance service. Some of the documents stolen by Madison included billing forms, maps, and Lifeflite's policies and procedures. Madison also stole Lifeflite's submission to the Commission on Accreditation of Air Medical Services ("CAAMS"), which is an organization that accredits air ambulance companies.

¶3 CAAMS accreditation is a prerequisite to certain air ambulance service contracts. The various documents that constituted the supporting material to Lifeflite's accreditation application, and which were required to be submitted to CAAMS, were assembled into a book known as the "CAAMS Manual." Madison removed this manual from Lifeflite's office, copied it, and returned it without Lifeflite's knowledge.

¶4 Lifeflite terminated Madison in July 1995, when it learned that he had also been working for NAAA. NAAA eventually terminated Madison in March 1996. NAAA's attorney subsequently turned over several computer disks to Lifeflite's president. The

disks contained Lifeflite's standards and policies, with Lifeflite's name changed to "NAAA."

¶ 5 Lifeflite brought claims against Defendants for theft of trade secrets, conversion, intentional interference with business expectancy, and racketeering. At trial, Defendants did not dispute that NAAA had utilized Lifeflite's materials. Defendants' defense was that they were unaware that Madison was stealing documents, that they did not know how Lifeflite's materials were incorporated into NAAA's materials, and that Lifeflite's materials did not constitute trade secrets.

¶ 6 The trial court directed a verdict in favor of Defendants on the intentional interference with business expectancy claim, and the jury returned a verdict in favor of Defendants on the racketeering claim. The jury failed to return a verdict on the theft of trade secrets and conversion claims, and the trial court declared a mistrial on those counts.

## II.

¶ 7 Lifeflite claims that it is entitled to a new trial because the trial court gave a jury instruction that improperly added an element of proof to its racketeering claim.[1] The trial court gave the Recommended Arizona Jury Instructions ("R.A.J.I.") (Civil) Commercial Torts Instruction No. 33, which defines a "pattern of unlawful activity" for a racketeering claim. The trial court added the following language:

"Continued unlawful activity" means a series of related acts extending over a substantial period of time or past conduct that by its nature projects into the future with a threat of repetition. Acts extending over a few weeks or months and threatening no

future criminal conduct are not "continued unlawful activity."

This added language, to which Lifeflite objects, is contained in the footnote to the R.A.J.I. (Civil) Commercial Torts Instruction No. 33, which cites *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241–42, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

¶ 8 On appeal, we will affirm the jury instructions if, taken as a whole, they provide the jury with the correct rules for reaching its decision. *See Miel v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 104, 109, 912 P.2d 1333, 1338 (1995). "The purpose of jury instructions is to explain the applicable law to the jury in terms that it can understand." *Cotterhill v. Bafile*, 177 Ariz. 76, 79–80, 865 P.2d 120, 123–24 (1993). A trial court is "entitled to give additional instructions which elaborate[ ] on the minimally required instructions to help the jury better understand the issues." *Id.* at 80, 865 P.2d at 124.

¶ 9 The federal racketeering statute defines a "pattern of racketeering activity" to require at least two acts of racketeering activity that occur after the effective date of the statute and within ten years of a prior act of racketeering. *See* 18 U.S.C. § 1961(5). Arizona's racketeering statute, A.R.S. section 13–2314.04(S)(3) (Supp.1999),[2] provides the following, more detailed, definition of "pattern of racketeering activity":

(a) At least two acts of racketeering as defined in § [13–2301(D)(4)(d), (e), (f), (g), (h), (i), (j), (m), (o), (p), (q), (r), (s), (t), (x), or (z) ] that meet the following requirements:

(i) The last act of racketeering activity that is alleged as the basis of the claim occurred within five years of a prior act of racketeering.

Acts are "related" if they have the same or similar purposes, results, participants, victims, or methods of commission, or have other similar characteristics.
R.A.J.I. (Civil) Commercial Torts 33 (3d ed.1997) (footnote omitted).

---

1. The R.A.J.I. instruction states as follows:
   To establish that defendant engaged in a "pattern of unlawful activity," plaintiff must prove:
   (1) At least two acts involving [the theft of property with a value of two hundred fifty dollars ($250) or more], the last act of which must have occurred within five years of the prior act;
   (2) The acts were related to each other; and
   (3) The acts amounted to or posed a threat of continued unlawful activity.

2. We refer to the current version of the statute, which is essentially the same as the version in effect when the acts alleged as the basis of the racketeering claim occurred.

**152**

(ii) The acts of racketeering that are alleged as the basis of the claim were related to each other or to a common external organizing principle, including the affairs of an enterprise. Acts of racketeering are related if they have the same or similar purposes, results, participants, victims or methods of commission or are otherwise interrelated by distinguishing characteristics.

(iii) The acts of racketeering that are alleged as the basis of the claim were continuous or exhibited the threat of being continuous.

¶ 10 In interpreting the federal statute, the Supreme Court in *H.J.* held that Congress intended that to establish a pattern of racketeering activity, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." 492 U.S. at 239, 109 S.Ct. 2893. The Court explained that the predicate acts meet the relationship requirement if they " 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics....' " *Id.* at 240, 109 S.Ct. 2893 (quoting the definition of relationship found in the Organized Crime Control Act, 18 U.S.C. § 3575(e)). Arizona's statute contains this identical language in its definition of related acts. *Compare* A.R.S. § 13–2314.04(S)(3)(a)(ii). The Court further explained that the continuing activity requirement could be fulfilled by showing "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement...." *H.J.*, 492 U.S. at 242, 109 S.Ct. 2893. The Court also stated that continuing activity referred to "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. 2893.

■ ¶ 11 Lifeflite argues that the trial court's instruction setting forth the more restrictive federal interpretation of "continued unlawful activity" was improper and requires reversal. Lifeflite relies on *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 595, 667

P.2d 1304, 1310 (1983), in which the Arizona Supreme Court explained that there were "significant differences" in the federal and Arizona racketeering statutes and that the federal statute was "more restrictive in scope." In that case, the court refused to adopt the restrictive federal interpretation of "racketeering injury" and instead applied the specific language of the Arizona statute. *See id.* Lifeflite contends that the trial court should have taken the same approach here.

¶ 12 Lifeflite's reliance on *Corbin* is misplaced. In 1993, ten years after *Corbin* was decided, the legislature amended Arizona's racketeering statute and thereby "[made] it even more analogous to its federal counterpart." *Rosier v. First Fin. Capital Corp.,* 181 Ariz. 218, 221 n. 5, 889 P.2d 11, 14 n. 5 (1994). Prior to these amendments, Arizona's statute did not require a plaintiff to show a "pattern of racketeering activity" as an element of a claim. *See Baines v. Superior Ct.,* 142 Ariz. 145, 149, 688 P.2d 1037, 1041 (1984). In 1993, however, the legislature added the requirement that a plaintiff show a "pattern of racketeering activity," which it defined as "[a]t least two acts of racketeering" that are "related" and "continuous"— requirements established by the Supreme Court in *H.J.,* 492 U.S. at 239, 109 S.Ct. 2893 ("It is this factor of *continuity plus relationship* which combines to produce a pattern."). Arizona's statute incorporates the Supreme Court's definition of related acts but does not expressly include the Court's definition of continuing activity. Because the Arizona and federal statutes are analogous, however, and because Arizona courts have not addressed this issue, we look to federal interpretations for guidance. *See Rosier,* 181 Ariz. at 221, 889 P.2d at 14.

■ ¶ 13 As noted above, in amending Arizona's statute, the legislature incorporated the federal requirement that a plaintiff demonstrate a "pattern of racketeering activity," the Supreme Court's interpretation of "pattern" as requiring that the acts be "related" and "continuous," and the Court's detailed definition of "related" acts. *See* A.R.S. § 13–2314.04(S)(3)(a)(ii), (iii). Accordingly, because of the legislature's obvious reliance on federal interpretation in fashioning these

amendments, it is reasonable to conclude that the legislature also intended to follow the Supreme Court's definition of "continuous" to require that the related predicate acts extend "over a substantial period of time," i.e., over more than "a few weeks or months." *H.J.*, 492 U.S. at 242, 109 S.Ct. 2893.

¶ 14 The history of the amendments to Arizona's racketeering statute suggests a legislative awareness of the Supreme Court's definition of continuing activity and an intention to accept it implicitly, if not explicitly. At Senate committee hearings on the amended racketeering statute, a "pattern of racketeering activity" was defined as requiring, among other things, that the acts continue "over a substantial period of time of more than a few months or a threat was exhibited [sic] they would continue." *RICO Litigation: Hearing on S. 1197 Before the Senate Comm. on Commerce and Econ. Dev.*, 41 st Legis., 1 st Reg. Sess. 4 (Ariz.1993) (statement of Barry Wong, policy analyst). Although the "more than a few months" language was not included in the text of the statute, the proposed bill passed without any objection to, or rejection of, the federal definition of that concept. *See id.; see also RICO Litigation: Hearing on S. 1197 Before the House Comm. on Judiciary*, 41 st Legis., 1 st Reg. Sess. (Ariz.1993) (passed with no comment on this particular language).

¶ 15 Because an interpretation of the Arizona statute to include the federal definition of continued unlawful activity is both reasonable and consistent with the apparent legislative intention in amending the statute, we find that the jury instruction was a proper statement of the law.

### III.

¶ 16 Defendants have requested an award of attorneys' fees on appeal pursuant to A.R.S. sections 13–2314.04(A) and (N). Because Defendants have prevailed on the racketeering claim on appeal, we grant their request for fees incurred in defending against the racketeering claim upon compliance with Arizona Rule of Civil Appellate Procedure 21.

¶ 17 We affirm the trial court's verdict in favor of Defendants on the racketeering claim.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and MICHAEL D. RYAN, Judge.