IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

—————————————

JERRY HANNOSH, a married man, *Plaintiff/Appellant,*

*v.*

DAVID P. SEGAL and JANE DOE SEGAL, his wife; ZALMAN SEGAL
and JANE DOE SEGAL, his wife; JOSEPH SEGAL and JANE DOE
SEGAL, his wife, *Defendants/Appellees.*

—————————————

JERRY HANNOSH, a married man, *Plaintiff/Appellee,*

*v.*

DAVID P. SEGAL and JANE DOE SEGAL, his wife; ZALMAN SEGAL
and JANE DOE SEGAL, his wife; JOSEPH SEGAL and JANE DOE
SEGAL, his wife, *Defendants/Appellants.*

No. 1 CA-CV 12-0811
FILED 05/22/2014

—————————————

Appeal from the Superior Court in Maricopa County
No. CV2011-053132
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

—————————————

COUNSEL

Jeffrey M. Proper, PLLC, Phoenix
By Jeffrey M. Proper
*Counsel for Plaintiff/Appellant Jerry Hannosh*

David P. Segal, Zalman Segal, Phoenix
Joseph Segal, Los Angeles, CA
*Defendants/Appellees*

---

**OPINION**

Presiding Judge Maurice Portley delivered the Opinion of the Court, in which Judge John C. Gemmill and Judge Kent E. Cattani joined.

---

**P O R T L E Y,** Judge:

**¶1**         We are asked to decide whether a person gambling on Internet websites can bring a private right of action to recover his losses under the Organized Crime, Fraud and Terrorism Act, Arizona Revised Statutes ("A.R.S.") section 13-2314.04(A),[1] also known as Arizona RICO or Arizona's racketeering statute. Because we agree with the superior court that such a cause of action is unavailable, we affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

**¶2**         Jerry Hannosh ("Hannosh") bet on sporting events on the Internet and ultimately lost approximately $800,000. In an attempt to recover his losses, he filed a lawsuit against David Segal, Zalman Segal, Joseph Segal, and their respective spouses (collectively, "the Segals") under Arizona's racketeering statute alleging their gambling websites constituted an enterprise engaged in a pattern of unlawful activity and that they were engaged in civil racketeering. The Segals filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, arguing that Hannosh had no cognizable injury, could not show proximate cause, and that his allegations inadequately supported liability. The superior court granted the motion and awarded the Segals their attorneys' fees and costs.

**¶3**         The court, however, reconsidered the award of attorneys' fees, and found that it would be unjust under § 13-2314.04(M) to award fees to the Segals. The Segals filed an unsuccessful motion asking the court to reconsider its denial of attorneys' fees. The parties then filed their appeals.

---

[1] We cite to the current version of statutes absent material changes.

2

## DISCUSSION

### Standard of Review

**¶4**        We review de novo a dismissal of a complaint for failure to state a claim upon which relief may be granted. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012). We will affirm if the plaintiff would not be entitled to relief even if all alleged facts could be proven to be true. *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 391, ¶ 18, 121 P.3d 1256, 1261 (App. 2005). We assume the truth of only well-pled facts in the complaint and reasonable inferences from those facts. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008). We can affirm the trial court's dismissal if correct for any reason. *See Dube v. Likins*, 216 Ariz. 406, 417 n.3, ¶ 36, 167 P.3d 93, 104 n.3 (App. 2007).

### I.       Are Gambling Losses an Injury under Arizona's Racketeering Statute Providing a Private Cause of Action?

**¶5**        Hannosh contends that the superior court incorrectly relied on federal, rather than Arizona, law when it dismissed his complaint. He argues that the money he lost gambling constitutes a cognizable injury that was proximately caused by the Segals' alleged Arizona RICO violations.

**¶6**        Whether gambling losses constitute an injury to a person, property or business under § 13-2314.04(A) is a question of statutory construction subject to de novo review. *See State v. Estrada*, 201 Ariz. 247, 250, ¶ 15, 34 P.3d 356, 359 (2001). Where the language of a statute is clear, we apply the plain language of the statute. *State v. Gallagher*, 205 Ariz. 267, 269, ¶ 5, 69 P.3d 38, 40 (App. 2003). But where there is ambiguity, we engage in statutory construction to determine the legislature's intent. *Id.*; *see In re Estate of Winn*, 214 Ariz. 149, 151, ¶ 8, 150 P.3d 236, 238 (2007) (noting that our primary goal when construing a statute is to effectuate the intent of the legislature). "To ascertain intent, we examine the words of the statutes at issue, 'the polic[ies] behind the statute[s] and the evil[s] [that they were] designed to remedy.'" *In re Estate of Winn*, 214 Ariz. at 151, ¶ 8, 150 P.3d at 238 (quoting *Calvert v. Farmers Ins. Co. of Ariz.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985)).

¶7        Arizona RICO allows a private cause of action for racketeering. Section 13-2314.04(A) provides that:

> A person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity, or by a violation of § 13-2312 involving a pattern of racketeering activity, may file an action in superior court for the recovery of up to treble damages and the costs of the suit, including reasonable attorney fees for trial and appellate representation.[2]

"Racketeering," in pertinent part, is defined as any act or preparatory act committed for financial gain, chargeable or indictable under the law where the act occurred and punishable by more than a year's imprisonment. A.R.S. § 13-2301(D)(4)(b). The racketeering provision specifically includes gambling,[3] money laundering, extortionate extensions of credit and participation in a criminal syndicate. A.R.S. §§ 13-2301(D)(4)(b)(vii), (viii), (xiii), (xxvi); -2314.04(T)(3)(b). A "pattern of racketeering activity" means that there must be at least two related and continuous acts of racketeering. A.R.S. § 13-2314.04(T)(3); *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 198 Ariz. 149, 152, ¶ 12, 7 P.3d 158, 161 (App. 2000). A person injured by a § 13-2312 pattern of racketeering violation can also seek relief under § 13-2314(A) from individuals allegedly conducting an illegal enterprise through racketeering. *See State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 595, 667 P.2d 1304, 1320 (1983), *superseded on other grounds by* A.R.S. § 13-2314.04; *see also*

---

[2] In a civil action, the terms "unlawful acts" or "pattern of unlawful activity" are used in lieu of "racketeering" unless there is an allegation of a crime of violence as a racketeering act. A.R.S. § 13-2314.04(S)(2).

[3] In Arizona, promotion of gambling is a class 5 felony and may constitute a predicate act under our racketeering statute. *See* A.R.S. §§ 13-702(D), -2301(D)(4)(b)(vii), -3303. Promotion of gambling occurs when a person knowingly "[c]onducts, organizes, manages, directs, supervises, or finances gambling" or "furnishes advice or assistance for the conduct, organization, management, direction, supervision, or financing of gambling" for a benefit. A.R.S. § 13-3303(A)(1)-(2). Promotion of gambling does not, however, include amusement, regulated or social gambling. *Id.* at § 13-3303(A).

*Lifeflite Med. Air Transp., Inc.*, 198 Ariz. at 152, ¶ 12, 7 P.3d at 161 (recognizing that state statute now requires a pattern of racketeering).

**¶8**        A plaintiff seeking damages or other relief from individuals allegedly engaged in racketeering does not have to allege a special racketeering injury. *State ex rel. Corbin,* 136 Ariz. at 595, 667 P.2d at 1310. The complaint is sufficient if there is an allegation that the plaintiff has been injured by a violation of § 13-2301(D)(4)(b), the predicate offense, and that the act was done for "financial gain, and . . . was chargeable and punishable by imprisonment for more than one year." *Id.* And a plaintiff seeking relief for a violation of a § 13-2312 pattern of racketeering "need only allege that he has been injured by the defendant's control or conduct of an enterprise by racketeering." *Id.*

**¶9**        Arizona's racketeering statutes do not specifically define an "actionable injury to his person, business or property" to include Internet gambling losses. A.R.S. §§ 13-2314, -2314.04. In creating § 13-2314 in 1978, the Arizona legislature looked to the federal RICO statute, which was intended to combat an increase in organized white-collar crime. *Rosier v. First Fin. Capital Corp.*, 181 Ariz. 218, 220-21, 889 P.2d 11, 13-14 (App. 1994) ("Arizona's RICO act is patterned after the federal RICO act."); *State ex rel. Corbin*, 136 Ariz. at 596, 667 P.2d at 1311 (noting that the legislature intended Arizona RICO "to be a tool in combating the serious problems of white collar crime"); *see Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) ("Congress enacted RICO 'to combat organized crime, not to provide a federal cause of action and treble damages' for personal injuries." (quoting *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) *abrogated on different grounds by Diaz v. Gates*, 420 F.3d 897, 898-99 (9th Cir. 2005))).

**¶10**        We look to federal interpretation for guidance where the federal and state RICO statutes contain similar provisions. *Rosier*, 181 Ariz. at 221, 889 P.2d at 14; *see Lifeflite Med. Air Transp., Inc.*, 198 Ariz. at 152, ¶ 12, 7 P.3d at 161 (noting that Arizona's racketeering statute was amended in 1993 to be more analogous to federal RICO). Where there are differences, we presume the legislature was deliberate in not following the federal statute. *See State v. Ivanhoe*, 165 Ariz. 272, 273-74, 798 P.2d 410, 411-12 (App. 1990) (finding that Arizona's racketeering act did not include sole proprietorships as enterprises because Arizona chose not to use the word "individual"). For example, a plaintiff alleging a federal RICO violation must demonstrate an injury to one's business or property interest that is cognizable under state law and is a "concrete financial loss." 18 U.S.C. § 1964(c); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d

969, 975 (9th Cir. 2008). Arizona, on the other hand, allows an Arizona RICO claim to be prosecuted if a plaintiff alleges an "injury to his *person*, business or property." A.R.S. § 13-2314.04(A) (emphasis added). This distinction does not, however, establish a basis for relief under Arizona law in this case.

**¶11** Federal courts have also examined RICO to determine what injury is one to business or property. Generally, gambling losses have been held not to constitute property or business harm. *See Chaset*, 300 F.3d at 1087 (noting that trading card purchasers do not suffer a federal RICO injury when they do not receive a prize card because they paid for and received the chance to obtain the card); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 188 (3d Cir. 2000) (noting that a lost speculative opportunity is not a federal RICO injury); *Adell v. Macon Cnty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1241 (M.D. Ala. 2011) ("The injuries of which Plaintiffs complain—illegal gambling losses (unaccompanied by allegations of fraud affecting their losses) and loss of honest services—do not qualify as RICO injuries to business or property."); *Dumas v. Major League Baseball Props., Inc.*, 104 F. Supp. 2d 1220, 1223 (S.D. Cal. 2000) (noting that unless there are allegations that the gambling enterprise was rigged, the plaintiffs received the benefit of their bargain and lack a business or property injury under the federal RICO statute).[4] Federal courts also recognize that even though gambling may be illegal under state law, the gambler exchanges money for a chance to win and suffers no RICO property injury. *See Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 51-52 (E.D.N.Y. 2000) (noting that the unavailability of enforcement of an illegal gambling transaction does not mean that the benefit of chance was not present); *see also Adell*, 785 F. Supp. 2d at 1239 ("[E]ven if the chance to win that Plaintiffs paid for was illegal under state law, such illegality in and of itself would not transform Plaintiffs' gambling losses into civil RICO property losses."). If, however, a gambler alleged that the gambling or the gambling odds were rigged, courts have

---

[4] *Kemp v. AT&T Co.* upheld the jury's determination that AT&T violated federal and Georgia RICO statutes by billing and collecting illegal gambling debts and allowed the gambler to recover. 393 F.3d 1354, 1357 (11th Cir. 2004). There, however, the defendant engaged in fraud by giving the impression that gambling phone debts were long distance charges and the gambling customers thought they had to pay the charges in order to receive uninterrupted telephone service. *Id.* at 1360. The court concluded that the plaintiff's gambling "payment was not made voluntarily under Georgia law." *Id.* at 1362.

noted that a gambler may be able to plead a federal RICO injury. *See Adell*, 785 F. Supp. 2d at 1239; *see also Price*, 105 F. Supp. 2d at 52.

**¶12**      Hannosh argues that because § 13-2314.04(A) also allows a claim for an "injury to his person," the result under Arizona law should be different than under the federal statute, and thus the court should have allowed his lawsuit to proceed. We disagree.

**¶13**      The term "injury to his person" is arguably ambiguous, but it does not appear to have been intended to include losses by a voluntary gambler who does not allege that the games were rigged. The term "injury to his person" has been in the racketeering statute since its passage even though, at the outset, only the state could sue for civil remedies. A.R.S. § 13-2314 (1978). The term was maintained after the legislature amended the statute to create private causes of action in 1993. A.R.S. §§ 13-2314, -2314.04 (West 1993).

**¶14**      Although the Arizona racketeering statute is broader than its federal counterpart, we disagree that the phrase "injury to [] person," in the Arizona statute, includes gambling losses from an alleged illegal gambling operation.[5] Although Black's Law Dictionary does not define "injury to person," it defines "injury" as "[t]he violation of another's legal right, for which the law provides a remedy; a wrong or injustice . . . . Some authorities distinguish *harm* from *injury*, holding that while *harm* denotes any personal loss or detriment, *injury* involves an actionable invasion of a legally protected interest." 801 (8th ed. 2004) (citing Restatement (Second) of Torts § 7, cmt. a (1965)). And, Black's Law Dictionary simply defines "person" as "[a] human being." *Id.* at 1178. Similarly, the Merriam-Webster's Dictionary defines "injury" as "an act that damages or hurts [or a] violation of another's rights for which the law allows an action to recover damages." *Injury*, Merriam-Webster, http://www.merriam-webster.com/dictionary/injury (last visited May 6, 2014). Merriam-Webster further defines injury as "hurt, damage, or loss sustained." *Id.*

**¶15**      Gambling losses would not qualify as an injury to person because gambling without a chance to lose is not "a legally protected interest." *See* Black's Law Dictionary 801 (8th ed. 2004). In fact, in the

---

[5] For example, a plaintiff cannot recover punitive damages or emotional injury damages under the statute in the absence of bodily injury. A.R.S. § 13-2314.04(K).

insurance context, payments that are made voluntarily with full knowledge of the facts cannot later be recovered by the payor. *Moody v. Lloyd's of London*, 61 Ariz. 534, 540, 152 P.2d 951, 953 (1944) (noting that an insurer who knew all facts before making payment under the policy could not recover the amount paid). As a result, because Hannosh voluntarily took the understood risk that he could win and that he could lose, his losses cannot be considered an "injury to his person" recoverable through an Arizona RICO lawsuit.

¶16　　　The Arizona Supreme Court has narrowly interpreted the phrase "injury to [] person" in a related context. In *Reed v. Real Detective Publishing Co.*, the court addressed whether a libel claim survived the defendant's death and determined that "[a]n injury . . . which affects the sensibilities is equally an injury to the person as an injury to the body would be." 63 Ariz. 294, 299, 306, 162 P.2d 133, 136, 139 (1945). The court noted, however, that the phrase "injury to person" emphasizes the word "person" as a noun, which relays greater importance on "a natural body, or perhaps a body corporate, and the injuries contemplated are injuries to that body." *Id.* at 301, 162 P.2d at 137 (quoting *McCaffrey v. Jackson*, 23 Pa. D. 173, 174 (Pa. D. 1914) (noting that "[t]he expression 'injury to person' is clearly more restrictive than the term 'personal injuries' employed in the act under consideration, and is to be distinguished therefrom")). As a result, libel, which besmirches character or reputation, is not an injury to person for purposes of determining the applicable statute of limitations. *Id.* at 301-02, 162 P.2d at 137.

¶17　　　Based on *Reed* and the dictionary definitions of "injury" and "person," we conclude that the term "injury to his person" in the Arizona statute includes bodily harm and an injury to a legally protected personal interest.[6] We do not find that "injury to his person" includes monetary losses as a result of voluntary gambling. Voluntary Internet gambling is a gamble — pick the right team or the spread on the game, you win and make money; pick the wrong team or the spread on a game, you lose and

---

[6] Under § 13-2314(A), our court has allowed recovery for damages resulting from emotional distress, but only when the plaintiff has also proven loss of property. *DeJonghe v. E.F. Hutton & Co.*, 171 Ariz. 341, 344, 830 P.2d 862, 865 (App. 1991) ("Given the proof of loss of property, damages may also be awarded for attendant emotional distress."). We view emotional distress as a component of damages and not as a separate injury to be alleged.

owe money. Voluntary gambling losses, in the absence of any allegation that the gambling is rigged, do not constitute an injury to person.

**¶18** In his complaint, Hannosh alleged the Segals financed, owned, controlled, conducted, or participated in two Internet gaming websites where he was given the opportunity to place bets on the outcome of events, like sporting games. The complaint further alleges that if the wager was unsuccessful, the enterprise kept the bet, but if the bettor was successful, he received the payout minus ten percent.

**¶19** Hannosh did not allege that the Segals manipulated the odds or rigged the gambling; therefore, he has not alleged an injury to business or property. Although Hannosh alleged that David Segal falsely said that the gambling operation was legal because it was based in Costa Rica, even if we assume the allegation was true, Hannosh got what he bargained for: an opportunity to win. He did not allege that he was deceived about a successful bettor receiving the payout minus ten percent. He was not swindled or cheated, and he did not suffer an actionable injury to person, business, or property by making bets and losing.

**¶20** Hannosh also alleged that as a result of his losses he faced "several implicit threats of using violence or other criminal means to cause harm to [himself] or his reputation or property" and that he "reasonably believed that such implicit threats were credible." He did not allege, however, that he suffered emotional distress or any other injury from these implicit threats. In fact, Hannosh's opening brief clarifies that he brought the action under Arizona RICO to "disgorge the profits unlawfully gained by the enterprise through recovery of his 'gambling losses' as well as treble damages," not to recover for any threatened harm.

**¶21** Given that Hannosh did not allege an injury to person, business, or property under our interpretation of § 13-2314.04, the superior court did not err by dismissing his complaint.[7]

### II. Attorneys' Fees

**¶22** The Segals challenge the ruling that denied their request for attorneys' fees. We review an award or denial of attorneys' fees for abuse of discretion. *Motzer v. Escalante*, 228 Ariz. 295, 296, ¶ 4, 265 P.3d 1094, 1095 (App. 2011). But we review questions of statutory interpretation

---

[7] Based on our resolution of the issue, we need not address the remainder of Hannosh's arguments.

related to a ruling on attorneys' fees de novo.  *Democratic Party of Pima Cnty. v. Ford*, 228 Ariz. 545, 547, ¶ 6, 269 P.2d 721, 723 (App. 2012).

**¶23**        Section 13-2314.04(A) allows a successful plaintiff to recover treble damages, costs, and reasonable attorneys' fees for trial and appellate representation.  A prevailing defendant "*may* be awarded costs and reasonable attorney fees incurred in defense of that claim."  A.R.S. § 13-2314.04(A) (emphasis added).  Section 13-2314.04(M) provides that "a court shall not award costs, including attorney fees, if the award would be unjust because of special circumstances."  Special circumstances include disparate finances of the parties or disproportionate costs and fees in relation to the nature of the damage or relief received.  A.R.S. § 13-2314.04(M).

**¶24**        Here, the superior court originally awarded the Segals their attorneys' fees pursuant to § 13-2314.04(A).  Hannosh then argued that the $36,579.50 fee award should be eliminated under § 13-2314(M) because (1) it was excessive when his annual income of $10,000 to $12,000 was compared with the $800,000 in gambling losses he allegedly lost to the Segals' Internet gambling sites, and (2) the complaint raised a matter of first impression in Arizona.  Hannosh "alternative[ly]" argued that the fee award was excessive compared to the work required and it should be reduced.  The court subsequently found that the award was unjust because of Hannosh's special circumstances and struck the award pursuant to § 13-2314.04(M).  Although the Segals filed an unsuccessful motion to reconsider and motion to amend judgment, they only argued that Hannosh was not entitled to a reduced award because he did not show that the attorneys' fees were excessive in relation to work done.

**¶25**        The Segals now argue that Hannosh failed to present evidence of the parties' disparate finances or that the fee award was disproportionate to the nature of the damage or other relief obtained.  They also contend that Hannosh's argument that the case was one of first impression was not a special circumstance warranting consideration.  The Segals raised neither of those arguments to the superior court; thus, they are waived because we generally will not consider arguments that were not presented to the trial court for the first time on appeal.  *See Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 434 n.8, ¶ 39, 167 P.3d 111, 121 n.8 (App. 2007) (noting that arguments not raised in the trial court are waived on appeal).

**¶26** The Segals attempt to argue that they preserved their arguments on appeal by stating in their motion to the trial court that Hannosh failed "to establish any entitlement to a reduced award." They made the statement in relation to Hannosh voluntarily gambling, but not in response to his claim of no special circumstances. Consequently, the superior court did not abuse its discretion by denying the Segals' attorneys' fee request.[8]

## CONCLUSION

**¶27** For the aforementioned reasons, we affirm the judgment.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : gsh

---

[8] We decline to address or rule on the issue despite waiver, as the Segals urge us to do under *Yarbrough v. Montoya-Paez*, 214 Ariz. 1, 8 n.6, ¶ 23, 147 P.3d 755, 762 n.6 (App. 2006).