IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GALLERY COMMUNITY ASSOCIATION, *Plaintiff/Appellant,*

*v.*

K. HOVNANIAN AT GALLERY, LLC, et al., *Defendants/Appellees.*

No. 1 CA-CV 23-0375

FILED 08-06-2024

Appeal from the Superior Court in Maricopa County
No. CV2020-008714
The Honorable Katherine Cooper, Judge

**VACATED AND REMANDED**

COUNSEL

Burg Simpson Eldredge Hersh & Jardine PC, Englewood, CO
By Craig S. Nuss
*Co-Counsel for Plaintiff/Appellant*

Holden Willits PLC, Phoenix
By Robert G. Schaffer, Roger E. Brodman
*Co-Counsel for Plaintiff/Appellant*

Lorber, Greenfield & Polito, LLP, Phoenix
By Louis W. Horowitz
*Co-Counsel for Defendants/Appellees*

Wilenchik & Bartness, P.C., Phoenix
By Dennis I. Wilenchik
*Co-Counsel for Defendants/Appellees*

Osborn Maledon, P.A., Phoenix
By Thomas L. Hudson, John S. Bullock
*Counsel for Amici Curiae Aire on McDowell Community Association*

_____

**OPINION**

Presiding Judge Andrew M. Jacobs delivered the opinion of the Court, in which Judge Jennifer M. Perkins and Judge David D. Weinzweig joined.

_____

**J A C O B S**, Judge:

¶1        This is an appeal about whether Arizona law lets homeowners' associations ("HOAs") bring claims for breach of the implied warranty of workmanship and habitability as homeowners' association dwelling actions under A.R.S. § 33-2002(A), where the HOA alleges construction defects in HOA common areas or in property the HOA does not own but must maintain, like homeowners' roofs and exterior walls.

¶2        Here, Gallery Community Association ("the HOA") sued four affiliated entities of the developer K. Hovnanian (collectively, "Hovnanian") that built and sold the eighteen units comprising The Gallery in Scottsdale for construction defects in common areas and areas the HOA must maintain.  The HOA owns the common areas, but no one lives within them.  And while the HOA must maintain areas within the eighteen units in which its members live, it doesn't own them.

¶3        The superior court granted Hovnanian summary judgment that the HOA cannot bring the common law and statutory claims an owner can for construction defects.  The court reasoned that because common law warranties arise from the building of the home and run to homeowners, A.R.S. § 33-2002(A) does not authorize actions by HOAs arising from construction defects, even though similar language in A.R.S. § 33-1242 authorizes parallel actions by condominium associations.  We disagree and reverse.

**FACTS AND PROCEDURAL HISTORY**

   **A.    The HOA's Declaration Grants it Powers and Duties to Maintain the Community.**

¶4        The Gallery Community ("Gallery") is a community of townhomes located in Scottsdale, Arizona comprised of four residential buildings containing eighteen units.  Individual homeowners purchased the lots.  Hovnanian was the developer, designer, general contractor, and seller of Gallery.  Hovnanian created the HOA to manage Gallery.

Hovnanian conveyed fee simple title in the common area of Gallery to the HOA by a quitclaim deed.

¶5          The HOA is governed by its Declaration of Covenants, Conditions, Restrictions, and Easements for Gallery (the "Declaration"), which K. Hovnanian created.  The Declaration is binding on Hovnanian, the HOA, and all "Owners, Members, and their respective successors in interest."  According to the Declaration, Hovnanian created the HOA "for the purpose of the efficient preservation of the values and amenities of the Property . . . ."

¶6          Through the Declaration, Hovnanian gave the HOA control over and the obligation to maintain the common areas in Gallery:

> Without the Owners' approval, the Association shall have the right, in its sole and absolute discretion, as to the Common Area conveyed, leased, or transferred to it or as to any other area placed under its jurisdiction . . . [r]econstruct, repair, replace, or refinish any improvement or portion thereof upon the Common Area or any other area placed under its jurisdiction.

¶7          Hovnanian also vested in the HOA the control of the exteriors of the eighteen dwellings within Gallery.  The Declaration authorized the HOA, at its discretion, to "paint the exterior of the Dwelling Units and repair, maintain and replace the exterior walls, stucco, façade, roofs or other surfaces," and "[w]ithout the Owners' approval . . . [r]econstruct, repair, replace or refinish any improvement or portion thereof upon the Common Area or any other area placed under its jurisdiction."  Section 8.1.5 of the Declaration also precludes residents from modifying their homes' exteriors without HOA approval:

> No improvement, alteration, landscaping, repair, excavation or other work which in any way alters the exterior appearance of the Property or the improvements located thereon from its natural or improved state existing on the date such Property was first conveyed by Declarant to a homebuyer shall be made without the prior approval of the Architectural Committee [of the HOA], except as otherwise expressly provided in this Declaration, and except in emergency circumstances.

 Section 8.1.7 even prohibits residents from "apply[ing] any paint to the exterior of [their home]," delegating that power to the HOA.

3

¶8          The Declaration grants the HOA a variety of powers to exercise on behalf of the owners of all of the lots in Gallery.  Section 6.2 of the Declaration states that the HOA makes annual assessments (fees) against each owned lot:

> To provide for the operation and management of [the HOA] and to provide funds for [the HOA] to pay for the improvement, maintenance and replacement of the Common Area, and to perform [the HOA's] duties and obligations under this Declaration, the Articles and the Bylaws, including, without limitation, the establishment of reasonable reserves for replacements, maintenance and contingencies….

Section 6.10.1 states that "the Board may cause a suit at law to be commenced and maintained in the name of [the HOA] against an Owner to enforce each such Assessment obligation."  And Section 6.10.2 allows the HOA to foreclose on defaulting residents.

### B.    The HOA Sued Hovnanian Over Construction Defects in the Common Area, and Exteriors of Homes the HOA Is Required to Maintain for the Homeowners of Gallery.

¶9          The HOA discovered various alleged construction defects in areas the Declaration obliges the HOA to maintain.  Within the common area, the HOA asserted the pool cabana and staircase walls outside many homes' lot lines had construction defects that would result in unanticipated repair costs.  The HOA likewise claimed areas within the separately owned exterior walls, roofs, and staircases of Gallery's residence were afflicted with construction defects.  According to the HOA's experts, many of these defects included deficient stucco installation on all of Gallery's buildings. The experts stated that entire walls of the affected areas would need to be redone.

¶10          On July 27, 2020, the HOA sued Hovnanian over these alleged defects in four counts: negligence (Count 1); breach of the implied covenant of good faith and fair dealing (Count 2); breach of the implied warranty of workmanship and habitability (Count 3); and breach of contract (Count 4). In Count 3, the HOA repeatedly pled that Hovnanian breached the implied warranty by failures of workmanship.  Hovnanian answered that it owed no duty to the HOA, had no privity of contract with the HOA, and that the HOA had no claim for breach of the implied warranty of workmanship and habitability because it was not a homeowner.  The HOA later voluntarily dismissed its negligence claim, leaving Counts 2, 3, and 4 at issue.

4

**C.** **The Superior Court Granted Hovnanian Summary Judgment, Reasoning That the HOA Lacked the Right to Sue for Breach of the Implied Warranty of Workmanship and Habitability.**

¶11        On September 30, 2022, Hovnanian (along with several third-party defendant subcontractors involved in building Gallery who are not parties to this appeal), moved for summary judgment against the HOA. Hovnanian argued that the HOA cannot assert claims sounding in the implied warranty of workmanship and habitability because the HOA "is not a homeowner." The HOA responded that builders are more broadly liable for defects in their work under implied warranties arising under Arizona law, and that no privity is required for suits under the implied warranties attaching to their construction.

¶12        On February 13, 2023, the superior court granted Hovnanian's motion for summary judgment on the three counts remaining in the case. As to Count 3, the court agreed with Hovnanian that an HOA could not assert a claim for breach of the implied warranty of workmanship and habitability. The court reasoned that because the HOA is not a homeowner and is suing over damage to common areas, not homes themselves, it "holds no implied warranty." The court likewise ruled for Hovnanian on Counts 2 and 4, reasoning that the HOA could not establish breach of contract or the implied covenant of good faith and fair dealing since the Declaration does not impose contractual construction obligations on Hovnanian.

¶13        The HOA timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1) and Article 6, Section 9 of the Arizona Constitution.

## DISCUSSION

¶14        The HOA appeals the superior court's grant of summary judgment as to Count 3, breach of the implied warranty of workmanship and habitability. We review summary judgments *de novo*. *Neptune Swimming Found. v. City of Scottsdale*, 256 Ariz. 497, 503 ¶ 22 (2024). Summary judgment is appropriate if there is no genuine dispute of material fact. Ariz. R. Civ. P. 56(a).

**The Superior Court Erred By Entering Judgment for Hovnanian, as Arizona Common Law and Statutory Law Authorize Its Suit for Construction Defects in the Common Areas and Parts of the Residences the Declaration Requires the HOA to Maintain.**

**¶15**　　　　The HOA and amicus curiae Aire on McDowell Community Association argue that Arizona's implied warranty of workmanship and habitability and A.R.S. § 33-2001 and § 33-2002 authorize the HOA to bring its action for construction defects.　Hovnanian argues that only a present owner of a home can sue that home's builder under the implied warranty. Hovnanian also argues that A.R.S. § 33-2001 and § 33-2002 do not create or recognize any right by HOAs to file actions for violation of the implied warranty.　The HOA and the amicus curiae are right.

### A.　Arizona Common Law Implies Warranties of Workmanship and Habitability By Builders of Homes to Their Purchasers and Later Owners.

**¶16**　　　　Arizona has long recognized the implied warranty of workmanship and habitability. *Zambrano v. M & RC II LLC,* 254 Ariz. 53, 59 ¶ 14 (2022).　Under the warranty, "the builder-vendor guarantees it built the home in a workmanlike manner and that it is habitable."　*Id.*　The purpose of the warranty is "to protect innocent purchasers and hold builders accountable for their work."　*Id.* (quoting *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 245 (1984)).　As such, the warranty is limited to only "latent defects that are undiscoverable by a reasonable pre-purchase inspection." *Id.*

**¶17**　　　　It is long settled that the implied warranty "protects not only the original buyer but also subsequent purchasers."　*Zambrano*, 254 Ariz. at 62 ¶ 25 (citing *Richards*, 139 Ariz. at 245 ("The effects of latent defects will be just as catastrophic on a subsequent owner as on an original buyer and the builder will be just as unable to justify improper or substandard work.")).

**¶18**　　　　It is thus clear that the owners of homes in Gallery can sue Hovnanian for breaches of the implied warranty, and that later purchasers of those homes can too.　We next turn to other provisions of Arizona law that help us answer the question here: whether an HOA may likewise invoke the implied warranty to sue Hovnanian for construction defects in common area structures that are not habitations, and for construction defects in external portions of owned homes the Declaration requires the HOA to maintain.　As we explain next, the answer to both questions is yes.

**B.** **The Legislature Determined That HOAs May Sue Builders for Construction Defects, Authorizing the HOA's Suit Against Hovnanian.**

¶19 The legislature authorized the HOA's suit here. Arizona Revised Statute § 33-2002(A) provides that, after performing certain conditions no one disputes were performed here, "a homeowners' association may file a homeowners' association dwelling action . . ." *Id.* A "homeowners' association dwelling action" is any action involving a construction defect as defined in section 12-1361 filed by a homeowners' association arising out of or related to the design, construction, condition or sale of the dwelling." A.R.S. § 33-2001(5). Significantly, the legislature defined "dwelling" broadly, to include not only "a newly constructed single family or multifamily unit designed for residential use," but also "property and improvements that are either owned by a homeowners' association or jointly by all of the members of a homeowners' association." A.R.S. § 33-2001(2).

¶20 Section 12-1361(4)(c) integrates the implied warranty into statute by defining "construction defect" as any "material deficiency in the design construction, manufacture, repair, alteration, remodeling or landscaping of a dwelling that is the result of . . . [t]he failure to adhere to generally accepted workmanship standards in the community." A.R.S. § 12-1361(4)(c). Construction defects arising from violations of generally accepted standards of workmanship, as the HOA alleged occurred here, fall within the plain language of A.R.S. § 12-1361(4)(c) and would violate the implied warranty of workmanship and habitability. *See Zambrano*, 254 Ariz. at 61-62 ¶ 25 ("warranting that a home was built using minimum standards of good workmanship" is consistent with purchasers' reasonable expectations). When pressed at argument, even counsel for Hovnanian conceded the overlap in coverage between the statute and the implied warranty.

¶21 Given that the claims in this case all sound in allegedly defective workmanship, there is no need here to parse a theoretical distinction between workmanship and habitability within the implied warranty. *Lofts at Fillmore Condo. Ass'n v. Reliance Com. Constr., Inc.*, 218 Ariz. 574, 576 ¶ 11 n.2 (2008) (assuming without deciding that warranty of workmanship and habitability is a unitary warranty, as opposed to two distinct warranties). The HOA's claims for breach of the implied warranty fall squarely within A.R.S. § 12-1361(4)(c). They thus give rise to a homeowners' association dwelling action as defined in A.R.S. § 33-2001(5) which the HOA may bring under A.R.S. § 33-2002.

¶22         Hovnanian's argument that A.R.S. § 33-2002 and A.R.S. § 33-2001(2) do not authorize the HOA to sue it fails.  Hovnanian discounts the plain language of A.R.S. § 33-2002 by pointing out that it "creates requirements that a homeowners' association must follow when filing a 'dwelling action.'"  True enough.  It requires HOA boards to disclose to their homeowner-members the information material to the suit.  A.R.S. § 33-2002(A)(1).  It requires a properly noticed meeting of the HOA's owner-members and board.  A.R.S. § 33-2002(A)(2).  It requires the board to authorize the suit.  A.R.S. § 33-2002(A)(3).  And it requires notice to the seller "of the alleged construction defects" so they have an opportunity to cure.  A.R.S. § 33-2002(A)(4).  Finally, if that notice is less than sixty days before the limitations period for suit expires, that period is tolled for sixty days."  A.R.S. § 33-2002(B).  Hovnanian's argument fails as an initial matter because there is nothing inherent in these procedural hoops that prevents A.R.S. § 33-2002(A)'s plain language – "a homeowners' association may file a homeowners' association dwelling action" – from meaning just what it says.  *See Arizona Advoc. Network Found. v. State*, 250 Ariz. 109, 114 ¶ 19 (App. 2020) (explaining that statute's plain language guides its interpretation).

¶23         Hovnanian's interpretation fails for additional reasons.  As amicus curiae points out, our courts have taken the language "may file an action," present in A.R.S. § 33-2002(A), to authorize civil actions.  *See Delgado v. Manor Care of Tucson AZ, LLC*, 242 Ariz. 309, 313 ¶ 17 (2017) (authorizing suits by vulnerable adults); *Hannosh v. Segal*, 235 Ariz. 108, 111 ¶ 7 (App. 2014) (authorizing cause of action for racketeering).  So too here.  Moreover, A.R.S. § 33-2002(B) refers to "the right of the association to bring a homeowners' association dwelling action."  Significantly, the legislature defined a "dwelling" to include the common areas and external portions of homes at issue here.  A.R.S. § 33-2001(2).

¶24         One of the guiding principles of statutory interpretation is that we must interpret statutes in their context, as a whole.  *Glazer v. State*, 244 Ariz. 612, 614 ¶ 10 (2018).  That principle too cuts against Hovnanian's cramped reading of A.R.S. § 33-2001 and § 33-2002.  Not only did the legislature state there that HOAs could sue builders in homeowners' association dwelling actions, using an expansive definition of dwelling to encompass common areas, but it created a complex series of checks for those suits and also provided a tolling period for them in limited circumstances.  Hovnanian's position amounts to arguing that the legislature created a tolling period for a nonexistent cause of action, and protected sellers by giving them notice and an opportunity to cure in a nonexistent cause of action.  Absent a right to bring suits like this one, all of

those provisions in A.R.S. § 33-2001 and § 33-2002 would be gratuitous surplusage. That is not how we read statutes. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) (directing us "to give meaning, if possible, to every word and provision [of a statute] so that no word or provision is rendered superfluous."). We conclude instead that these statutes authorize the HOA's suit.

**¶25** Doing so, we are mindful that the Arizona Supreme Court has held that A.R.S. § 12-1362(A) and (B) do not create a cause of action but instead a procedure for purchaser dwelling actions. *Zambrano*, 254 Ariz. at 62 ¶ 27. We nonetheless reject Hovnanian's argument, grounded in *Zambrano*, that because A.R.S. § 12-1362(A) and (B) do not create a cause of action, A.R.S. § 33-2001 and § 33-2002 likewise do not. The two statutes are importantly non-analogous – our legislature enacted A.R.S. § 12-1362(A) and (B) after case law had recognized the implied warranty for purchasers. As such, they could only constitute rules for the existing cause of action, instead of authorizing the cause of action. But the reverse is true of A.R.S. § 33-2001 and § 33-2002 – when the legislature wrote them, no court had recognized an implied warranty right in HOAs to sue for construction defects. These statutes are either rules for a nonexistent cause of action, or themselves an authorization of one. As explained, we see in A.R.S. § 33-2001 and § 33-2002 a legislative judgment that HOAs may do precisely that.

**¶26** Finally, Hovnanian argues that the fact that the legislature authorized suits by condominium associations in A.R.S. § 33-1242(A)(4) using language different from that in A.R.S. § 33-2002(A) demonstrates that the latter statute does not authorize suits. This does not follow. Hovnanian is right that "the association may . . . institute . . . litigation," the wording in A.R.S. § 33-1242(A)(4), is modestly different from "a homeowners' association may file a[n]… action," the language in A.R.S. § 33-2002(A). But the difference is minor and immaterial – their phrasing is similar and parallel, and they both authorize suits by their plain language.

**CONCLUSION**

¶27      For these reasons, we vacate the superior court's grant of summary judgment and remand for further proceedings.  Because we do, we also vacate the superior court's award of attorneys' fees to Gallery.  We deny the parties' requests for fees in this court, without prejudice to the parties renewing requests for their appellate fees at the appropriate time in the superior court.

